IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                              *
DAVID WALTHER
                              *
     Plaintiff,
                              *
v.                            *    CIVIL NO.: WDQ-04-3599
STATE OF MARYLAND, et al.
                              *

     Defendant.               *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION AND ORDER

David Walther sued his former employer, the Maryland
Department of Human Resources (the "Department"), the State of
Maryland (the "State"), Larry Gray, Inspector General of the
Department, Angelia Butler, the Deputy Inspector General, and
William King, Program Manager for violations of Title VII of the
Civil Rights Act of 1964 ("Title VII")[1], 42 U.S.C. §§ 1981, 1983,
and 1985[2], and the Age Discrimination in Employment Act ("ADEA")[3].
Walther has also brought various Maryland tort and breach of
contract claims.   Pending is the Defendants' motion for summary
judgment.[4]   For the following reasons, summary judgment will be

---

[1] 42 U.S.C. §§ 2000e *et seq.* (2005).

[2] 42 U.S.C. §§ 1981, 1983, 1985 (2005).

[3] 29 U.S.C. §§ 206 *et seq.* (2005).

[4] Walther also filed a motion to strike Defendants' summary
judgment and a motion to compel discovery.  As Walther's motion
to strike lacks merit, the motion should be denied.  At the

1

granted on the Defendants' federal claims, and the Court will decline supplemental jurisdiction over the state law claims. *See Jinks v. Richland County*, 538 U.S. 456, 460 (2003).

## I. BACKGROUND

In August 2001, Walther, a Caucasian male in his 50's, began working as an Internal Auditor II in the Department's Performance Audit Unit. *See* Mot. Summ. J. Ex. 2 ("Walther Depo.") at 19, 38-39. Six months later, Walther requested a transfer after he received a negative evaluation and stated that another auditor in his unit was being treated more favorably. *See id.* at 40-46.[5]

In 2002, he was transferred to the Local Department of Social Services Audit Unit ("LD Unit") which was headed by Angelia Butler, an African-American female. *See id.* at 46-51. Walther's supervisor was William King, a Caucasian male, who reported to Butler. *See id.* at 46-51. The LD Unit had African-American and

_____

September 9, 2005 pretrial conference, the Plaintiff was instructed to provide to the Defendant a list of its outstanding discovery requests by the close of business and the Defendant was instructed to comply with such request. As the Plaintiff has not notified the Court that the Defendant did not comply with the Court's order, the motion to compel discovery will be denied as moot.

The Defendants have also filed a motion to compel discovery. As the Defendants' evidence was sufficient to grant summary judgment, further discovery is unnecessary and the motion will therefore be denied as moot.

[5]Walther's supervisor in the Performance Audit Unit was Rasphal Chana, an Asian-American male.

Caucasian auditors.  *See id.* at 48-49.

Upon joining the LD Unit, Walther was trained in a variety of areas.  *See* Mot. Summ. J. Exs. 4 ("Butler Depo.") at 152, 162; 7 ("OAH Decision") at  4.  Walther maintains that he received less training than the other auditors, especially the African-Americans.  *See* Mot. Summ. J. Ex. 2 at 52-54; Opp. Ex. 1 ("Walther Aff.").  While in the LD Unit, Walther received numerous poor evaluations and reprimands from Butler and King criticizing his analytical, organizational and time management skills.  *See* Mot. Summ. J. Exs. 5 ("King Aff."), 6 ("Butler Aff."), 8 ("August 2001-July 2002 Evaluation"), 11 ("November 2002 Reprimand"), 12 ("December 2002 Leave Forfeiture"), 14 ("August 2002-July 2003 Evaluation"), 21 ("2004 Performance Review").  Walther unsuccessfully challenged these evaluations and reprimands through the internal process and before the Office of Administrative Hearings ("OAH").  *See* Mot. Summ. J. Exs. 2 ("Walther Depo.") at 68, 142-143,7 ("OAH Decision"), 9 ("State Personnel Management System Appeal and Grievance Form"), 10 ("OAH Final Decision").

In his appeals, Walther contended that with appropriate training, his work would have been better.  *See* Mot. Summ. J. Ex. 10 ("OAH Final Decision") at 9-10. Walther alleged that his supervisors' criticism was "unfair and clearly discrimination", and inquired "why am I the only grade 16 auditor in your unit held to the audit standards with the perfection of which I am held?"  *See*

3

Mot. Summ. J. Exs. 5 ("King Aff."), 6 ("Butler Aff.").

        To monitor Walther's progress, Butler frequently evaluated Walther's work. *See* Mot. Summ. J. Ex. 6 ("Butler Aff."). Walther perceived these evaluations as harassment. *See* Opp. Ex. 1 ("Walther Aff."). Walther also forfeited annual leave for his failure to timely complete assignments. *See* Mot. Summ. J. Exs. 16 ("July 2003 Leave Forfeiture"), 17 ("September 2003 Leave Forfeiture"). In August 2003, Larry Gray, a Caucasian male, became the Inspector General of the Department. *See* Mot. Summ. J. at 42. In July 2003, these poor evaluations led to Walther's placement on a 180-day Performance Improvement Plan ("PIP"). *See* Mot. Summ. J. Ex. 15 ("PIP"). In late January 2004, Walther received an unsatisfactory rating under his PIP. *See* Mot. Summ. J. Ex. 2 ("Walther Depo.") at 220-221. In February 2005, Walther was terminated. *See id.*[6]

        On January 28, 2004, Walther filed a complaint with the Maryland Commission on Human Relations and the Equal Opportunity Commission alleging racial discrimination and harassment. The EEOC subsequently issued Walther a right to sue letter.

        On November 10, 2004, Walther brought this suit.

## II. LEGAL DISCUSSION

A.    Motion for Summary Judgment

---

        [6] As the Inspector General, Larry Gray was involved in the forfeiture of Walther's annual leave and his termination. *See* Mot. Summ. J. at 42.

1. Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  Thus, "the judge must ask... whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

The court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must produce evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence is not sufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

2.   Individual Liability under Title VII and the ADEA

Title VII provides that it "shall be an unlawful

employment practice for an employer... to discriminate against any individual with respect to his ...terms, conditions, or privileges of employment, because of such individual's ..race." 42 U.S.C. § 2000e-2(a).  Under Title VII, an "employer" includes a "person engaged in an industry affecting commerce who has fifteen or more employees.., and any agent of such person," *Id*. § 2000e(b).

The ADEA makes it unlawful for an employer to discriminate on the basis of age against its employees.  *See* 29 U.S.C. § 623(a). The ADEA defines the term "employer" as a person engaged in an industry affecting commerce who has 20 or more employees .....,and any agent of such a person. *Id.* § 630(b).

Neither Title VII nor the ADEA imposes individual liability.  *See Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) (quoting *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994) ("It would make little sense to hold a single individual liable when Congress had expressly exempted all companies employing fewer than twenty persons from the statute.")).

Accordingly, Butler, King, and Gray will be granted summary judgment on the Title VII and ADEA claims.

3.   Sovereign Immunity under the ADEA

Walther also claims that the State and the Department discriminated against him in violation of the ADEA. The State and Department, however, are immune from suit under the ADEA. *Kimel v.*

6

*Florida Board of Regents*, 528 U.S. 62, 82 (2000) (ADEA did not abrogate sovereign immunity).

    4.   Disparate Treatment under Title VII and Section 1981

To establish a prima facie case of disparate treatment under Title VII and Section 1981[7], Walther must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3)while he was performing at a level that met the employer's legitimate job expectations; and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001). This initial showing requires the plaintiff to produce "facts which would enable the fact-finder to conclude with reasonable probability that in the absence of any further explanation, the adverse employment action was the product of racial discrimination." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993).

A prima facie case merely creates a presumption of discrimination. The employer can rebut this presumption by articulating a legitimate, nondiscriminatory reason for the allegedly adverse employment action. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). The plaintiff

---

[7]The elements of a prima facie case are identical under Title VII and Section 1981. *Gairola v. Virginia Dept. of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985).

always bears the ultimate burden of proving that the employer's articulated reasons were not its true reasons but were a pretext for discrimination. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (*citing Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Walther cites several examples of racial discrimination. These include: lack of training, denial of compensatory time, negative performance evaluations, sharing of a computer, forfeiture of annual leave, unfair deadlines, daily evaluations and isolation from coworkers. The Defendants allege that none of these incidents constitutes discrimination.

(A) Lack of Training

The Plaintiff argues that he was denied training opportunities comparable to those provided to African-Americans employees. Specifically, the Plaintiff contends that while his requests for training were denied, African-American employees were given individual training. The Plaintiff, however, has failed to support this contention with evidence. *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 526 (4th Cir. 2003) (unsupported allegation is not sufficient to defeat a summary judgment motion).

(B) Denial of Compensatory Time

The Plaintiff claims that he was denied compensatory time because he is Caucasian. The uncontradicted evidence is that Walther was only denied compensatory time when his supervisors

concluded that he was not entitled to it.  Walther's requests were based upon his poor time management. *See*  Mot. Summ. J. Ex.4 at 41-42.  Although Walther disputes this, he  has failed to demonstrate that the poor time management rationale is pretextual.

(C) Negative Performance Evaluations

Poor evaluations are actionable when the employer subsequently uses them to alter detrimentally the plaintiff's employment. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004)(*quoting Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)).  Although the Plaintiff's evaluations resulted in his forfeiture of annual leave and termination, he waived all rights to sue  for the forfeiture and termination.  *See* Mot. Summ. J. Exs. 20 ("June 2004 Settlement Agreement"), 22 ("May 2004 Settlement Agreement").  The Plaintiff's claim, therefore, is barred.

(D)  Exit Conferences

Plaintiff contends that the Defendants barred him from exit conferences attended by African-American auditors.  Exit conferences are conducted so that auditors may defend the findings of their audits and answer their superiors' questions.  *See* Mot. Summ. J. Ex. 2 ("Walther Depo.") at 111, 112.  Although it is undisputed that the Plaintiff did not attend any of these conferences, there is no evidence that race was a factor.  The Defendants have presented evidence that black and white auditors were invited to these exit conferences.  *See id.*  The Department

9

invites only those auditors whose work contributed to the audit's findings. *See id.* at 104. Plaintiff was not invited because the final findings of his audits were investigated by other auditors and therefore his presence at the exit conferences was unwarranted. *See.* Mot. Summ. J. Ex. 4 ("Butler Depo.") at 103-104.  Walther has failed to demonstrate that this reason is pretextual.

        (E)   Sharing a Computer

        The Plaintiff argues that he was discriminated against because he was forced to share a computer with other auditors. Even if sharing a computer altered the Plaintiff's employment conditions, it does not create an inference of discrimination.  There is evidence that the Plaintiff was required to share a computer on three occasions. *See* Mot. Summ. J. Ex. 28 ("December 2003 Walther Memorandum")at 1, 2.  He admits that he was required to share his computer with black and white employees and that another Caucasian employee had exclusive use of a computer. *See id.* at 125-136. There is nothing in the record supporting the Plaintiff's contention that he was forced to share a computer because he is white. *See Fofana v. Giant Food*, No. 91-1576, 1994 U.S. App. LEXIS 29106, slip. op. at *4(4th Cir. Oct. 19, 2004) (evidence that employee not of plaintiff's race was terminated under similar circumstances negated plaintiff's race discrimination claim).

        (F)   Discipline and Forfeiture of Leave

        Plaintiff contends that he was unfairly disciplined and reprimanded for taking approved leave.  The evidence is that the

Plaintiff was reprimanded for not timely completing assignments. *See* Mot. Summ. J. Exs. 16 ("July 2003 Leave Forfeiture"), 17 ("September 2003 Leave Forfeiture"). Although the Plaintiff alleges that he was the only employee under Butler's supervision who was ever reprimanded, this is not proof of discrimination. Plaintiff's allegation that he was treated differently than other white and black employees does not raise an inference of discrimination.

Plaintiff was also subjected to a one-day forfeiture of leave for photocopying documents for his OAH hearing. *See* Mot. Summ. J. Ex. 24 ("January 2004 Counseling Memo"). Walther, however, admits that this forfeiture was rescinded. *See* Plain. Opp. at 12. The rescinded forfeiture is not evidence of discrimination.

(G)  Deadline for Assignments

Plaintiff claims that he was given shorter deadlines than African-American employees. The evidence, however, shows that deadlines are based upon the complexity of the assignments. *See* Mot. Summ. J. Ex. 4 ("Butler Depo.")at 172-173.  Because the Department lacked confidence in the Plaintiff, he was given less complex assignments. *See* Mot. Summ. J. Exs. 9 ("Grievance Decision of Office of Inspector General"), 21 ("January 2004 Performance Review").  Plaintiff has no evidence that employees with similar assignments were given more time.  Moreover, as the Plaintiff's assignments required constant revision, review time was built into the deadlines. *See* Mot. Summ. J. Ex. 4 ("Butler Depo.") at 172-173.

(H)  Daily Evaluations

Plaintiff contends that the Department discriminated against him by submitting him to daily evaluations that were not given to African-American employees.  Although it is true that no African-American employees were subjected to daily evaluation neither were any other Caucasian employees. *See* Mot. Summ. J. Ex. 2 ("Walther Depo.")at 116-117.  The record is devoid of any evidence suggesting that the Plaintiff was given daily evaluations because of his race.  The record, however, clearly demonstrates that the Plaintiff's work performance warranted the daily evaluations.  *See* Mot. Summ. J. Exs. 5 ("King Aff."), 6 ("Butler Aff."), 7 ("OAH Decision"),8 ("August 2001-July 2002 Evaluation"), 11 ("November 2002 Reprimand"), 14 ("August 2002-July 2003 Evaluation"), 21 ("2004 Performance Review").

(I)  Isolation from Co-workers

Plaintiff's claim of isolation from co-workers does not establish an adverse employment action.  *See Fulton v. United Parcel Service,Inc.*, No. 5:01CV373-BR(2), 2003 WL 24033686, at *4 (E.D.N.C. Aug 07, 2003).

5. Retaliation

An administrative charge defines the court claims.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996).  Claims are limited to those stated in the initial charge, reasonably related to the complaint and developed by reasonable investigation of the charge.  *Id*. at 963.

The complaint merely alleged that the Plaintiff suffered racial discrimination and harassment.  Therefore, the EEOC did not investigate a retaliation claim.  *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002) (EEOC would not have reasonably investigated other retaliation, color and sex discrimination claims when charge alleged only race discrimination). Both Plaintiff's Title VII and Section 1981 claims are barred.  *See Brown v. Berkeley County Sch. Dist.*, 339 F. Supp. 2d 715, 720 (D.S.C. 2004) (Section 1981 claims rise and fall with Title VII claim and is thus subject to the requirement of exhaustion of administrative remedies.)

6. Hostile Work Environment

Walther alleges that he was subjected to a hostile work environment.  In a hostile work environment, the harasser's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."  *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986).

The elements of a hostile work environment claim are: (1) the employee was harassed because of his race; (2) the harassment was unwelcome; (3)the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. *Booth v. North Carolina Dept. of Environment, Health & Natural Resources*, 899 F. Supp. 1457, 1463 (E.D.N.C.  1995).

The hostile work environment claim fails because he cannot establish that any of the allegedly harassing behavior was because of his race.   The Plaintiff cites such incidents as daily evaluations, reprimands, and shorter deadlines as harassing conduct. As Plaintiff has not produced any evidence of racial animus beyond his subjective feelings, summary judgment is appropriate. *See Cowan v. Lowe's Cos.,* No. 1:98CV7, 1998 U.S. Dist. LEXIS 21882, at *16 (M.D.N.C. Dec. 14, 1998) (Plaintiff's own naked opinion, without more, is simply insufficient to successfully oppose a motion for summary judgment).

7.  Section 1983 Claims

Section 1983 provides a remedy for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983 (2005).

Walther contends that the individual defendants violated his First and Fourteenth Amendment Rights. Butler, King and Gray argue that these claims are barred because they are entitled to qualified immunity.

Government officials are generally entitled to qualified immunity from suit for acts committed in their performance of discretionary functions unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In analyzing a qualified immunity defense, the Court must identify the specific right that the plaintiff asserts at a high level of particularity was infringed by the challenged

14

conduct.  *See Anderson v. Creighton*, 483 U.S. 635, 639(1987).

(A)  Freedom of Speech

To prove a First Amendment violation, a public employee must establish that(1) he spoke out as a citizen on a matter of public concern, (2) his free speech interest is not outweighed by his government employer's interest in providing the public service he was hired to provide, (3) he suffered an adverse employment action, and (4) his protected speech played a substantial role or was a motivating factor in the adverse employment action taken by the employer.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999).Speech involves a matter of public concern if it affects the social, political, or general well-being of a community. *See Connick v. Myers*, 461 U.S. 138, 146(1983).

Here,  Walther did not complain to either Butler, King or Fisher that he was being discriminated against because of his race.  Instead, he complained that he was not being treated like the other employees. *See* Mot. Summ. J. Exs.5 ("King Aff."), 6 ("Butler Aff.").  His complaints, therefore, were not a matter of public concern. *Connick*, 461 U.S. at 147 ("Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee").

(B)  Due Process

The Fourteenth Amendment prohibits the States from depriving its citizens of life, liberty, or property without due process. Walther contends that he was denied due process because the Defendants filed a false evaluation of his performance, forfeited his annual leave, subjected him to an arbitrary suspension, denied him training and refused to give him overtime opportunities.

(i)  False Evaluations

Walther maintains that he was deprived of property without due process when the Defendants filed a false evaluation of his performance. This deprivation purportedly led to injury to Walther's reputation. Injury to reputation, however, is not a property or liberty interest protected by the Fourteenth Amendment. *Siegert v. Giley*, 500 U.S. 226, 233-34 (1991).

(ii) Forfeiture of Leave and Arbitrary Suspension

Walther claims that the forfeiture of one day leave for copying documents for his OAH hearing denied him due process. As stated above, this forfeiture was ultimately rescinded. *See* Plain. Opp. at 12. This claim is moot.

His claim that he was subjected to an arbitrary suspension is unsupported.

(iii) Denial of Training and Overtime Opportunities

The Plaintiff states that the Defendants wrongfully denied him training and overtime opportunities given to African-

16

American employees.  This claim is unsupported.

     (C)  Equal Protection

     The Equal Protection Clause prohibits the unequal treatment of similarly situated individuals.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440 (1985). As stated above, Walther has not established that he was treated differently than similarly situated employees.  Therefore, his equal protection claim fails.

     8.  Conspiracy

     To prove a civil conspiracy, a plaintiff must show:(1) conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d 341, 347 (D.Md. 2003) (*citing Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995)).

     Walther claims that his supervisors conspired to lower his performance ratings and deprive him of rights and opportunities given to African-American employees. *See* Mot. Summ. J. Ex.2 at 59. Walther has no evidence of an agreement among his supervisors to deprive him of his constitutional rights. He merely states that his supervisors--Chana and King--cooperated with Butler to discriminate against him "because they are evaluated by a black person that

discriminated against me...They better do and jump as high as she says to jump." *See id.* Walther offers no reason for Gray's role in the alleged conspiracy. *See* Complaint at ¶67. This assertion is an insufficient basis to deny summary judgment. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) ("Trial Court is obligated to prevent factually unsupported claims from proceeding to trial")

### III.  CONCLUSION

For the reasons discussed above, the Defendants' motion for summary judgment will be granted, the Defendants' motion to compel will be denied as moot, the Plaintiff's motion to strike the Defendants' motion for summary judgment will be denied, and the Plaintiff's motion to compel will be denied as moot.


October 31, 2005                    _____/s/_____
                                    William D. Quarles, Jr.
                                    United States District Judge